UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES D. AIRY,<br><br>    Petitioner,<br><br>       v.<br><br>KEVIN CHAPPELL, Warden,<br><br>    Respondent. | Case No.  11-cv-01007-JST (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Charles D. Airy, challenging the validity of a judgment obtained against him in state court.[1]  Respondent filed an answer to the petition.  Petitioner has filed a traverse.

**I.  PROCEDURAL HISTORY**

On September 2, 2004, the Santa Clara County District Attorney filed an information charging petitioner with three counts of selling or offering to sell cocaine base and one count of possession of ammunition by a felon, along with twelve prior strike offenses and one prior prison term.  (Ex. 1 at 24-32.[2])  On August 31, 2006, a jury found petitioner guilty of the three drug charges and acquitted him of the ammunition charge.  (Ex. 2 at 474-75.)  Petitioner admitted the

---

[1] Petitioner initially named Kathleen L. Dickinson, former warden of California Medical Facility, as the respondent in this action.  The California Department of Corrections and Rehabilitation online inmate locator service confirms that petitioner has been transferred to San Quentin State Prison ("SQSP").  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kevin Chappell, the current warden of SQSP, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian.  Petitioner is reminded that he must keep the Court and all parties informed of any change of address.

[2] All references herein to exhibits are to the exhibits submitted by respondent in support of the answer.

prior conviction allegations.  (Id. at 482-83.)  On February 6, 2007, the trial court struck all but one of the prior offenses and sentenced petitioner to 14 years and 4 months in state prison.  (Id. at 487-88; Ex. 1 at 382.)

On November 13, 2008, in a reasoned opinion, the California Court of Appeal affirmed the judgment.  People v. Airy, No. H031356, 2008 WL 4885738 (Cal. Ct. App. Nov. 13, 2008).  On January 28, 2009, the California Supreme Court summarily denied the petition for review.  (Ex. 7.)  Petitioner filed unsuccessful state habeas petitions in the Superior Court, California Court of Appeal, and California Supreme Court.  (Exs. 8-10.)  The instant federal petition was filed on March 3, 2011.

## II.  STATEMENT OF FACTS

The California Court of Appeal found the facts underlying petitioner's conviction to be as follows:[3]

> [Petitioner] was involved in three drug transactions with undercover police officer Lopez. The first sale was on December 31, 2003.  Officer Lopez had previously met [petitioner], and called him that morning on a cell phone number he had for [petitioner], and left a message.  [Petitioner] returned Lopez' call.  Lopez told [petitioner] he wanted to purchase $250 worth of "shit" from him.  [Petitioner] told Lopez to go to an intersection and call him for more instructions.
>
> When Lopez arrived at the designated intersection, he called [petitioner], who told him to go to a nearby parking lot behind a gas station.  Shortly after Lopez entered the parking lot, [petitioner] followed in a white Cadillac.  Lopez got out of this car, and went up to the driver's side of the Cadillac, spoke to [petitioner], and gave him $250.  [Petitioner] handed Lopez cocaine base.  Before and after the transaction between Lopez and [petitioner], police officers conducting surveillance saw [petitioner] leave a house in Cupertino driving a white Cadillac.
>
> The second drug sale happened on January 6, 2004.  The day prior, [petitioner] called Lopez from the same cell phone number that had been used in the first sale, and asked him if he wanted to buy more cocaine base.  Lopez called [petitioner] back on January 6 to set up the sale, and [petitioner] told Lopez to drive to the same parking lot as the original sale. [Petitioner] drove into the parking lot in the same white Cadillac as he was driving during the first sale.  Lopez walked up to [petitioner's] driver's side window, handed [petitioner] $250, and received cocaine base in exchange.

---

[3] This summary is presumed correct.  Hernandez v. Small, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

2

> During the second sale, Lopez told [petitioner] he wanted to "bump[ ] up" the amount of cocaine base for the next buy. [Petitioner] told Lopez he should call again if he wanted to buy more cocaine base. After the sale, police officers conducting surveillance saw [petitioner] return to the house in Cupertino in the white Cadillac.
>
> The third drug sale was set to happen a week later, on January 15, 2004. On January 10, [petitioner] called Lopez and left a message that he should call him back on the same cell phone he had used in the last two drug sales. [Petitioner] called Lopez again the next day and offered to sell him $2,000 worth of cocaine base. On January 13, [petitioner] called Lopez and asked him when the sale would take place. Lopez told him he needed time to get together all the money. The next day, on January 14, Lopez called [petitioner] from a land line rather than his cell phone so the conversation could be recorded. The two agreed to meet for the drug sale at the same parking lot they had used on the two prior occasions. Shortly after they hung up, [petitioner] called Lopez to ask if he was a police officer.
>
> On January 15, [petitioner] called Lopez and arranged to meet in the evening after work for the drug sale. Lopez told [petitioner] he would meet him with half of the purchase money. Officers conducting surveillance saw [petitioner] leaving the house in Cupertino in the white Cadillac. Officers also saw a woman driving a minivan follow [petitioner] from the Cupertino house.
>
> Lopez saw [petitioner] drive into the parking lot where they arranged to meet driving the white Cadillac. Lopez got out of this car, made eye contact with [petitioner], and walked past [petitioner's] car and the woman's minivan. Once Lopez walked past the two cars, another officer pulled into the parking lot in a marked police car.
>
> After [petitioner's] arrest, he and his car were searched. The Cupertino home was also searched. There were no drugs found during any of the searches. Officers found the cell phone used in the previous drug transactions during the search incident to arrest. Officers found small plastic baggies consistent with drug-packaging material in the Cupertino home.

People v. Airy, No. H031356, 2008 WL 4885738, *1-2 (Cal. Ct. App. Nov. 13, 2008).

## III.  DISCUSSION

A.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

3

States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, if constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

Here, as noted, the California Supreme Court summarily denied petitioner's petition for review. The Court of Appeal, in its opinion on direct review, addressed one of the claims petitioner raises in the instant petition. The Court of Appeal thus was the highest court to have reviewed the claim in a reasoned decision, and, as to that claim, it is the Court of Appeal's decision that this Court reviews herein. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v.

Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). Two of petitioner's claims were addressed by the Santa Clara County Superior Court on state habeas, and the Court reviews the superior court's decision as to those claims. See id.

B.  Petitioner's Claims

   1.  Claims Relating to Confidential Informant

Prior to trial, the prosecutor indicated that Officer Lopez originally met petitioner through a confidential source whose identity Officer Lopez did not wish to disclose. (Ex. 2 at 75-76.) The prosecutor indicated that Officer Lopez would invoke the state privilege against divulging a confidential source if questioned about how he met petitioner. (Id. at 71.) The trial court subsequently held an in camera hearing on the issue, which was not reported. (Id. at 75.) The trial court ruled that the identity of the confidential source would not be disclosed, and the initial meeting between Officer Lopez and petitioner would not be mentioned. The trial court summarized its ruling, following the hearing:

> I have indicated that based upon the fact that [petitioner] is not charged with anything related to that first meeting, it appears that whatever the person or persons told the undercover officer when that introduction was made, it didn't have anything to do with any of the charges that are brought against [petitioner]. It's more akin to identifying him as someone, and then the police watching, and the charges. And as I understand it, the evidence that's going to be presented related to the charges is all based on subsequent contacts and comments and conversations that were made between the undercover officer and [petitioner]. And not related to anything said by the confidential informant.
>
> So I don't believe that the informant would be material to the charges now before the Court.
>
> I specifically said that the officer would not be allowed to testify to his impression that he formed at that meeting that [petitioner] would be likely to sell contraband, and I would not allow him to testify that as a result of the meeting or because of what happened at the meeting, he made the subsequent call to him. Simply going to be – the first meeting is going to be limited to the fact that it's face-to-face, that it was [petitioner], and how long he spent, you know, in the presence of [petitioner].
>
> The reason I'm letting that in is because of its relevance to his eyewitness identification of [petitioner] as the person who made the later sales. So anything that the person might have told him about [petitioner], anything he might have gained in terms of internal impressions are not permitted.

(Ex. 2 at 77-78.)

Petitioner raises three related claims regarding the confidential informant: (1) the trial court violated his right to a fair trial by declining to order disclosure of the confidential informant; (2) trial counsel was ineffective with regard to the issue of the confidential informant; and (3) appellate counsel was ineffective in failing to raise the above claims on appeal.

        a.        <u>Right to a Fair Trial</u>

Petitioner claims he was denied his right to a fair trial when the Court denied the defense request to order the disclosure of the identity of the confidential informant. (Pet., Dkt. 1-1, at 3.) Specifically, petitioner argues that his defense was one of "mistaken identity," and the confidential source could have been called to the stand to testify that petitioner was not the person he introduced to Officer Lopez. (<u>Id.</u> at 5, 12-13.)

Petitioner presented this claim only on state habeas to the state courts, which summarily denied it. When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable. See <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review . . . is not de novo review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." See <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." See <u>Harrington v. Richter</u>, 131 S. Ct. 770, 784 (2011).

Petitioner's claim fails for three reasons. First, a state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fair trial guaranteed by due process. <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-20 (9th Cir. 1991). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. <u>Henry v. Kernan</u>, 197 F.3d 1021, 1031 (9th Cir. 1999); <u>Jammal</u>, 926 F.2d at 919. While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is

6

1  certainly possible to have a fair trial even when state standards are violated. Perry v. Rushen, 713

2  F.2d 1447, 1453 (9th Cir. 1983).

3       "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules

4  excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006)

5  (citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (due process does not

6  guarantee a defendant the right to present all relevant evidence). "[T]he introduction of relevant

7  evidence can be limited by the State for a valid reason." Montana, 518 U.S. at 53 (internal quotes

8  and citation omitted). But this latitude is limited by a defendant's constitutional rights to due

9  process and to present a defense, rights originating in the Sixth and Fourteenth Amendments.

10  Holmes, 547 U.S. at 324. Due process is violated only where the excluded evidence had

11  "persuasive assurances of trustworthiness" and was critical to the defense. Chambers v.

12  Mississippi, 410 U.S. 284, 302 (1973). "Only rarely [has the Supreme Court] held that the right to

13  present a complete defense was violated by the exclusion of defense evidence under a state rule of

14  evidence." Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013).

15       Petitioner has not shown that the trial court's refusal to provide him with the confidential

16  source's identity denied him the fundamental right to present a defense. As noted by the trial

17  court, the source was not present during the three drug transactions between petitioner and Officer

18  Lopez. His or her only involvement was to introduce petitioner and Officer Lopez before any of

19  the transactions took place. The charges against petitioner arose solely out of the drug

20  transactions. The confidential source clearly was not an active participant in the crimes. Further,

21  petitioner's theory that he might have been able to obtain exonerating evidence from the

22  confidential source is based on speculation alone. Under these circumstances petitioner was not

23  deprived of his right to present a defense, and his interest in learning the identity of the

24  confidential source was outweighed by the state's interest in protecting the identity of its

25  confidential informants. See Cal. Evid. Code §§ 1040-42.

26       Second, petitioner has not referenced any authority showing that the state court's rejection

27  of this claim was contrary to or based on an unreasonable application of clearly established federal

28  law as announced by the United States Supreme Court. In Roviaro v. United States, 353 U.S. 53

7

1  (1957), the Supreme Court held that where the government opposes disclosure of the identity of an
2  informer, a trial judge must balance the public's interest in protecting the flow of information
3  against the individual's right to prepare his defense.  353 U.S. at 62.  The Supreme Court noted,
4  however, that the scope of the privilege is limited.  "Where the disclosure of an informer's identity,
5  or of the contents of his communication, is relevant and helpful to the defense of an accused, or is
6  essential to a fair determination of a cause, the privilege must give way."  Id. at 60-61.  The
7  petitioner bears the burden of showing the need for disclosure.  See United States v. Sai Keung
8  Wong, 886 F.2d 252, 256 (9th Cir. 1989) (citing United States v. Buffington, 815 F.2d 1292,
9  1299) (9th Cir. 1987)).  "He must show that he has more than a mere suspicion that the informant
10 has information which will prove relevant and helpful or will be essential to a fair trial."  United
11 States v. Amador-Galvan, 9 F.3d 1414, 1417 (9th Cir. 1993) (internal quotes and citation omitted).
12 Whether a proper balance renders nondisclosure erroneous depends on the particular
13 circumstances of the case, taking into consideration the crime charged, the possible defenses, the
14 possible significance of the informer's testimony, and other relevant factors.  Roviaro, 353 U.S. at
15 62.  This Court finds the Roviaro disclosure test to be clearly established law for purposes of 28
16 U.S.C. § 2254(d).  See Carpenter v. Lock, 257 F.3d 775, 779 (8th Cir. 2001); Foster v. Ludwick,
17 208 F. Supp. 2d 750, 758-59 (E.D. Mich. 2002); McCray v. Castro, 2002 WL 737052, *9-10
18 (N.D. Cal. 2002) (Breyer, J.).[4]

19         As discussed above, the informant's only role here was to introduce Officer Lopez to

---

[4] While Roviaro was not explicitly decided on the basis of constitutional claims, both the Supreme Court and lower federal courts have extended its application to such.  See United States v. Valenzuela-Bernal, 458 U.S. 858, 870 (1982) (citing McCray v. Illinois, 386 U.S. 300 (1967)) (suggesting Roviaro would have been decided no differently if considered in context of constitutional claims, and applying balancing test to Sixth Amendment and due process claims); Souza v. Ellerthorpe, 712 F.2d 1529, 1530-31 (1st Cir. 1983) (relying on Roviaro as controlling authority for claim of constitutional error in habeas petition); Simpson v. Kreiger, 565 F.2d 390, 391 (6th Cir. 1977) (assuming without deciding that "Roviaro claim" is cognizable in federal habeas corpus); United States v. Emory, 468 F.2d 1017, 1020-21 (8th Cir. 1972) (due process concerns underlie Roviaro); United States v. Ordonez, 737 F.2d 793, 809 (9th Cir. 1984) ("The balancing test imposed on trial courts by Roviaro is critical to the preservation of due process."); Gaines v. Hess, 662 F.2d 1364, 1367-68 (10th Cir. 1981) (concerns of fundamental fairness and due process underlie Roviaro).

1    petitioner. He or she was not a percipient witness to any of the charged crimes. The possibility

2    that he or she could give exonerating evidence is at best speculative. Consequently, although the

3    state court did not apply the Roviaro balancing test, its decision denying petitioner's claim was not

4    contrary to the requirements of Roviaro and its progeny. See Richter, 131 S. Ct. at 784.

5        Third, even assuming the trial court's ruling was erroneous, it was harmless under Brecht,

6    because sufficient admissible evidence pointed to petitioner's guilt and refuted petitioner's

7    "mistaken identity" defense. Specifically, Officer Lopez identified petitioner as the person who

8    sold or offered to sell cocaine by petitioner's voice (Ex. 2 at 134, 144, 151-52, 158-59), by his cell

9    phone number (id. at 133, 137, 144-45, 151-52, 158-59), and by visual recognition of petitioner

10   from having seen him on multiple occasions (id. at 132, 138-39, 163-64). Also, the cell phone

11   identified by the number used in each transaction was discovered in the search incident to arrest.

12   (Id. at 168, 177-78.) See Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983) (no constitutional

13   violation in excluding evidence that another man was witnessed near scene where identification of

14   petitioner was strong). In light of the strong case against petitioner, the exclusion of the

15   confidential source did not have a "substantial and injurious effect or influence in determining the

16   jury's verdict." Brecht, 507 U.S. at 637.

17        Accordingly, petitioner is not entitled to habeas relief on this claim.

18        b.       Ineffective Assistance of Trial Counsel

19        Petitioner claims that he was deprived of effective assistance of counsel when defense

20   counsel "agreed with the court's decision to deprive petitioner's access to a confidential informant

21   who would have testified that he (petitioner) is not the person that was introduced to Officer

22   Lopez." (Pet., Dkt. 1-1, at 11.)

23        Claims of ineffective assistance of counsel are examined under Strickland v. Washington,

24   466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, a petitioner must

25   establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it

26   fell below an "objective standard of reasonableness" under prevailing professional norms, id. at

27   687-68, "not whether it deviated from best practices or most common custom," Harrington v.

28   Richter, 131 S. Ct. 770, 788 (2011) (citing Strickland, 466 U.S. at 690 ). "A court considering a

9

claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Id. at 787 (quoting Strickland, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Where the petitioner is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792 (citing Strickland, 466 U.S. at 693). It is unnecessary for a federal court considering an ineffective assistance of counsel claim on habeas review to address the prejudice prong of the Strickland test if the petitioner cannot establish incompetence under the first prong. Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

The standards of both 28 U.S.C. § 2254(d) and Strickland are "highly deferential . . . and when the two apply in tandem, review is doubly so." Richter, 131 S. Ct. at 788 (quotation and citations omitted). "The question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The only court to have reviewed this claim in a reasoned decision was the Santa Clara County Superior Court on state habeas. (Ex. 10.) The superior court rejected the claim on the ground that the confidential source was not a material witness. (See id., citing Williams v. Super. Ct., 38 Cal. App. 3d 412, 420 (1974).)

The Court first notes that the basis for petitioner's claim is unclear. Petitioner does not challenge the sufficiency of the in camera hearing and does not point to anything defense counsel did or did not do at the hearing that amounted to deficient performance. See United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984) (holding petitioner must make sufficient factual showing to substantiate ineffective assistance of counsel claim).

Petitioner argues that he "had a right for defense counsel to seek the testimony of this individual as a nonconfidential informant and merely as a material witness as to whether or not the petitioner is the person he introduced [to] Officer Lopez." (Pet., Dkt. 1-1, at 12.) As explained above, however, counsel *did* seek disclosure of the informant's identity, but the trial court denied that request. Counsel had no way of offering the testimony of the confidential source. After the trial court made its ruling, counsel stated that, because Officer Lopez would not disclose the informant's identity, "I would object to this meeting being mentioned at all and I would prefer that any testimony from Detective Lopez simply begin from the information that we already have before us, which began with the first phone call." (Ex. 2 at 76.) The trial court agreed. (Id. at 78.) Counsel's request to avoid any mention of the initial meeting did not demonstrate agreement with the nondisclosure ruling; rather, counsel successfully prevented the officer from testifying that he met petitioner under circumstances suggesting he was a drug dealer. This does not constitute deficient performance. Under such circumstances, defense counsel could have made a reasonable tactical decision not to reargue for disclosure of the confidential source when the trial judge had already made a finding following in camera review.

Further, the Court finds no prejudice. As discussed above, sufficient admissible evidence pointed to petitioner's guilt, including Officer Lopez's identification of petitioner as the person involved in the drug transactions. As also discussed above, petitioner's contention that the confidential source would have testified that he did not introduce petitioner to Officer Lopez is speculative and probably irrelevant. Based on the record before the Court, there is no substantial probability that, even had the confidential source been disclosed, the jury would have had a reasonable doubt respecting petitioner's guilt.

Accordingly, petitioner is not entitled to habeas relief on this claim.

c.  <u>Ineffective Assistance of Appellate Counsel</u>

Petitioner claims he received ineffective assistance of counsel on appeal because appellate counsel failed to raise the above claims on appeal. (Pet., Dkt. 1-1, at 2-14.) Said claim was also considered and rejected by the state superior court on state habeas. (Ex. 10.)

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant

effective assistance of counsel on his first appeal. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland. See Strickland, 466 U.S. at 668; Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). A petitioner thus must show his counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Miller, 882 F.2d at 1434 & n.9.

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a criminal defendant. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). "[T]he weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Miller, 882 F.2d at 1434. Consequently, where appellate counsel "decline[s] to raise a weak issue," he or she will "frequently remain above an objective standard of competence" and, for the same reason, will have caused his client no prejudice. Id.

Under California law, to obtain disclosure of an informant's identity, a defendant must establish that the informant was a material witness on the issue of guilt or innocence and that non-disclosure of his or her identity would deprive the defendant of a fair trial. See Theodor v. Superior Court, 8 Cal. 3d 77, 88 (1972). "That burden is discharged . . . when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in [the] defendant's exoneration." People v. Garcia, 67 Cal. 2d 830, 839-40 (1967). "[If] the informer was an actual participant in the crime alleged or was a nonparticipating eyewitness to that offense, ipso facto it is held he would be a material witness on the issue of guilt and nondisclosure will deprive the defendant of a fair trial." People v. Lee, 164 Cal. App. 3d 830, 835-36 (Cal. Ct. App. 1985). "However, when the informer is shown to have been neither a participant in nor a nonparticipant eyewitness to the charged offense, [as is the case here,] the possibility he could give evidence which might exonerate the defendant is even more speculative and, hence, may become an unreasonable possibility." Id. at 836. When a party seeks disclosure of an informant's identity, the trial court must determine whether "the informant is a material witness on the issue of guilt" and can hold an in camera hearing to determine whether "there is a reasonable possibility that nondisclosure might

deprive the defendant of a fair trial." Cal. Evid. Code § 1042(d).

Here, the trial court conducted an in camera review and concluded that the confidential informant was not a material witness given that the charges did not relate to anything said or seen by the confidential informant. Here, as explained, there is nothing in the record to support a finding that the informant was a material witness whose identity was required to ensure a fair trial. Mere speculation is not enough (Amador-Galvan, 9 F.3d at 1417; People v. Luera, 86 Cal. App. 4th 513, 526 (Cal. Ct. App. 2001)), but that is all petitioner can offer. In sum, petitioner has not met the burden of either the federal or state tests. Consequently, any claim that the confidential informant should have been disclosed would have failed on appeal, and appellate counsel cannot be deemed ineffective for failing to bring the claim.

The Court has already found that trial counsel was not ineffective with regard to the issue of the confidential informant. Consequently, appellate counsel was not ineffective in declining to so argue.

Accordingly, petitioner is not entitled to habeas relief on this claim.

2.   Claim Relating to Towing Receipt

Petitioner claims trial counsel was ineffective in failing to introduce evidence of the towing receipt for petitioner's Cadillac, which evidence petitioner contends was exculpatory. (Pet., Dkt. 1-1, at 15-21.) The highest court to have considered this claim in a reasoned opinion was the California Court of Appeal on direct appeal.

a.   Background

In Officer Lopez's report of the first transaction he identified the car driven by petitioner as a white Cadillac with the license plate number "3VGN260." (Pet. Ex. B, Dkt. 1-2, at 52.)[5] In Officer Lopez's report of the second and third transactions, the vehicle is referred to as the same white Cadillac petitioner was driving before, without specifying a license plate number. (Pet. Ex. B, Dkt. 1-2, at 52-56.) At trial, Officer Lopez and the police officers who conducted surveillance testified that they had observed petitioner driving a white Cadillac to and from the three drug

---

[5] In his search warrant affidavit, Officer Lopez also identified the model year of the car as 1985. (Ex. 2 at 200.)

13

1    transactions. (Ex. 2 at 199-200, 307-08, 325-26, 330, 342-44, 355.) The officers did not write

2    down or remember the license plate number of the Cadillac petitioner was driving when he was

3    arrested. (Id. at 202-03, 308, 325, 330, 344.) After the arrest police searched the Cadillac, but did

4    not impound it, because they were in a hurry to conduct a search of the Cupertino house before

5    10:00 p.m., when their authority expired. (Id. at 202-03, 225.)

6    At petitioner's pretrial discovery motion, defense counsel indicated that he had evidence of

7    a towing receipt for petitioner's white Cadillac showing that the license plate was different from

8    what Officer Lopez had listed in his police report and search warrant affidavit. (Ex. 2 at 4.)

9    Counsel stated the towing receipt showed that the car that was towed from the location where the

10   stop occurred was a Cadillac with the license plate 2NMA790, not 3VGN260. (Ex. 2 at 4.) The

11   Cadillac registered to petitioner is a 1989 Cadillac with license plate number 2NMA790. (Ex. 2 at

12   204; Pet., Dkt. 1-1, at 5.)

13   At trial, defense counsel called a witness, Floyd Morrow, a resident of Santa Clara in

14   December 2003 and January 2004. (Ex. 2 at 380.) Mr. Morrow testified that the license plate

15   reported by police, 3VGN260, actually belonged to his black 1989 Cadillac. (Id. at 380-81, 391.)

16   Morrow had never loaned this car to anyone, and it had remained parked at home in his carport

17   during late 2003 and early 2004. He had never noticed that the license plates were missing,

18   although he drove the car infrequently – about three times in two years – because he owned four

19   other vehicles. (Id. at 383-84, 388-91.) Mr. Morrow testified that his next door neighbor

20   associated with people who were involved with drugs. (Id. at 384-87.) At one point his neighbor

21   had offered to fix something under the bumper for "no particular reason," and Mr. Morrow agreed.

22   (Id. at 384-87, 392.)

23   Defense counsel did not introduce the towing receipt at trial. However, in closing

24   argument, defense counsel pointed out that petitioner's Cadillac had a different license plate

25   number than the one identified by Officer Lopez, which he argued cast doubt on the officer's

26   credibility. (Ex. 2 at 426, 433, 437, 439.)

27   In October 2007, defense counsel signed a declaration stating that he had considered

28   introducing the towing receipt through the testimony of Robin Muldrew, petitioner's girlfriend,

14

who had signed the receipt. (Pet. Ex. I, Dkt. 1-2, at 96-97.) It appears this declaration was prepared in response to petitioner's petition for habeas corpus in the state superior court. (See id. (declaration filed in superior court).) Counsel stated:

> I ultimately made a tactical decision not to call her as a witness, because I determined that any benefit that would have been derived from her authentication of the towing receipt would have been far outweighed by the risk of her being cross-examined on the issue of [petitioner's] cell phone. I made this decision because she would have testified that the same number that Detective Lopez testified he called to arrange the purchases of cocaine from [petitioner], was the number she used to call [petitioner] herself during their relationship.

Id. at 97.

### b.  California Court of Appeal Opinion

The declaration discussed above was not part of the record on direct appeal. The California Court of Appeal noted that the record did not demonstrate the reason for counsel's failure to introduce the towing receipt, but held that petitioner had not established that counsel's performance was deficient, because there were "many possible explanations for why counsel may not have introduced the towing receipt at trial." Airy, 2008 WL 4885738 at *5.  The Court of Appeal also found that petitioner had not shown prejudice:

> In addition, [petitioner] cannot establish that but for counsel's failure to introduce the towing receipt, there is a reasonable probability that the result of the proceeding would have been different. (*Strickland v. Washington*, supra, 466 U.S. at p. 694.)  There was ample evidence at trial that defendant was the person involved in the drug transactions with Lopez.  Lopez testified he recognized [petitioner's] voice on the telephone calls before the three transactions, and he visually identified [petitioner] as the person from whom he received cocaine base on the two prior occasions.  Moreover, the cell phone [petitioner] used to set up each of the three transactions was found at the scene of the arrest. [Petitioner's] theory that this is a case of mistaken identity, and he was simply at the wrong place at the wrong time was not credible based on the evidence.  The introduction of the towing receipt would have done little, if anything to bolster [petitioner's] theory.

Airy, 2008 WL 4885738, *5.

### c.  Analysis

Applying the legal principles on ineffective assistance of counsel outlined above to petitioner's claim, the Court finds defense counsel made an express tactical decision not to call Robin Muldrew to introduce the towing receipt.  Defense counsel did not want to risk testimony by Ms. Muldrew confirming that the phone number used by Officer Lopez to arrange the drug

15

1  transactions was in fact petitioner's cell phone number. The cell phone was one of the most
2  incriminating pieces of evidence against petitioner. It was plainly reasonable for counsel to avoid
3  emphasizing that connection.

4      Petitioner argues that counsel could have avoided this risk by limiting his direct
5  examination of Ms. Muldrew to the single issue of authentication of the towing receipt, thereby
6  precluding the prosecution from cross-examining her on other issues, such as the cell phone
7  number. (Pet., Dkt. 1-1, at 18.) The Court notes, however that the prosecution included Ms.
8  Muldrew on its witness list. (Ex. 1 at 191). Consequently, there was a risk that having Ms.
9  Muldrew on the stand would invite the prosecution to call her as a witness in their case in chief or
10 as a rebuttal witness; and it was a reasonable tactical decision to avoid such risk.

11     Petitioner also asserts that defense counsel could have authenticated the towing receipt by
12 other means, specifically by calling the tow truck driver or custodian of records for the tow truck
13 company. (Pet., Dkt. 1-1, at 18.) To succeed on a claim that counsel was ineffective in failing to
14 call a favorable witness, a federal habeas petitioner must identify the witness, provide the
15 testimony the witness would have given, show the witness was likely to have been available to
16 testify and would have given the proffered favorable testimony, and demonstrate a reasonable
17 probability that, had such testimony been introduced, the jury would have reached a verdict more
18 favorable to the petitioner. See Alcala v. Woodford, 334 F.3d at 862, 872-73 (9th Cir. 2003). A
19 petitioner's mere speculation that the witness would have given helpful information if interviewed
20 by counsel and called to the stand is not enough to establish ineffective assistance. See Bragg v.
21 Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001), amended, 253 F.3d 1150 (9th Cir. 2001).

22     In Dows v. Wood, 211 F.3d 480 (9th Cir. 2000), the Ninth Circuit denied a petitioner's
23 claim that his counsel had been ineffective in failing to investigate and call a witness, where the
24 petitioner only provided his own "self-serving affidavit" and no other evidence, such as "an
25 affidavit from [the] alleged witness," that the witness would have given helpful testimony. Id. at
26 486-87; cf. Alcala, 334 F.3d at 872 & n. 3 (distinguishing, inter alia, Dows; finding ineffective
27 assistance of counsel where petitioner submitted interviews reflecting testimony missing witnesses
28 would have provided). As with the petitioner in Dows, petitioner here submits no more than his

16

own statements in his petition; he provides no affidavit from any purported witness from the towing company or any other evidence showing the testimony such witness would have given. Nor does petitioner provide any evidence demonstrating any such witness was available to testify at trial. Indeed, petitioner has not submitted the towing receipt as an exhibit to this petition, and it does not appear in the state court record. Consequently, petitioner has not made a showing of deficient performance on the part of defense counsel.

Finally, the state court reasonably concluded that no prejudice resulted. See Woodford v. Visciotti, 537 U.S. 19, 26-27 (2002) (deferring to state court's conclusion that defendant was not prejudiced by counsel's errors). As discussed above, Officer Lopez identified petitioner – by petitioner's voice, by his cell phone number, and by visual recognition from having seen him on multiple occasions – as the person who sold or offered to sell him cocaine. The cell phone petitioner used in each transaction was discovered during the search incident to arrest. Moreover, the testimony of the defense witness, Mr. Morrow, supported an inference that the license plate observed during the first transaction was placed on petitioner's car and then switched before the third transaction.

Petitioner's theory that he was coincidentally wandering through the wrong place at the wrong time – a business parking lot, after hours, that was the destination for a drug transaction set up through the cell phone he happened to be carrying – was reasonably rejected by the trier of fact. Moreover, defense counsel did present evidence that the license plate for petitioner's car was different from the one identified by police during the initial drug transaction, but the jury rejected the defense theory of the case. The towing slip would not have overcome the more credible inferences from the abundant evidence that supported the verdict. Thus, petitioner has not met his burden to "affirmatively prove prejudice," Strickland at 693, or to show that the state court's decision was so lacking in justification that it was beyond any possibility for fairminded disagreement. Harrington, 131 S. Ct. at 787.

Accordingly, petitioner is not entitled to habeas relief on this claim.

C.     Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. See Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. Id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

### IV.  CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute Warden Kevin Chappell on the docket as the respondent in this action.

The Clerk is further directed to change petitioner's address to Charles D. Airy, #F-61294, San Quentin State Prison, San Quentin, CA 94974.

**IT IS SO ORDERED.**

Dated:  March 21, 2014

_____
JON S. TIGAR
United States District Judge